OPINION
{¶ 1} Appellant, Pamela Babbs, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the motion of Franklin County Children Services ("FCCS") for permanent custody of appellant's minor children, Kiara Babbs, aka Kiaira Cowan, and Anthony Babbs, aka Reaquon Kiante' Babbs. Because we find appellant was not provided with adequate notice about a hearing that terminated her parental rights, we reverse and remand the matter to the trial court.
 {¶ 2} According to a complaint filed by FCCS, on January 3, 2000, appellant with her children went to FCCS. During this visit, appellant indicated to FCCS she had no food; she had no beds; and she was being evicted. At that time, appellant also allegedly wanted to leave her children with FCCS. In response to appellant's request for assistance, FCCS purchased food for appellant and the children. Appellant then returned home with her children.
 {¶ 3} Two days later appellant returned to FCCS and expressed a wish to leave her children with FCCS. Accordingly, FCCS placed appellant's children in foster care.
 {¶ 4} On January 7, 2000, a FCCS caseworker met with appellant at her home. During this home visit, appellant purportedly appeared agitated, exhibited rapid speech, and paced the floor. Appellant also purportedly admitted to being violent and to involvement in domestic violence.
 {¶ 5} During the January 7, 2000, home visit, appellant also allegedly received a telephone call. The ensuing communication led the FCCS caseworker to suspect appellant may have been a prostitute or involved with the sale of drugs. Additionally, according to FCCS, during this home visit, appellant allegedly reported she might be charged with carrying a concealed weapon as her car had been impounded and she allegedly had a gun in her possession.
 {¶ 6} On January 7, 2000, FCCS filed a complaint alleging appellant's children to be neglected and dependent children. At the time of the complaint, the whereabouts of Kiara Babbs' putative father were unknown, although it was alleged Kiara Babbs' putative father was incarcerated. The identity and whereabouts of Anthony Babbs' father were alleged to be unknown.
 {¶ 7} On January 7, 2000, a magistrate issued an emergency care order that authorized FCCS to temporarily care for appellant's children. That same day a magistrate appointed a guardian ad litem for appellant's children.
 {¶ 8} The trial court scheduled a hearing for March 2, 2000, to consider the allegations of the complaint. Notice of the hearing was sent to appellant and she was issued a subpoena. On March 7, 2000, the trial court appointed attorney William A. Settina to represent appellant.
 {¶ 9} After the parties moved for a continuance, the hearing was rescheduled to March 16, 2000. On March 23, 2000, a magistrate rendered a decision in which the magistrate found appellant's children to be neglected and dependent minors. The magistrate ordered appellant's children to be wards of the court and awarded temporary custody to FCCS. The magistrate also granted attorney Settina leave to withdraw as counsel for appellant. That same day the trial court adopted and approved the magistrate's decision.
 {¶ 10} On April 13, 2000, FCCS moved for an alternative disposition. In its motion, FCCS alleged, among other things, that appellant demonstrated inappropriate behaviors during child visitation sessions; appellant's children were upset following visitation sessions; appellant would not meet with caseworkers; and appellant failed to comply with case plan requirements, such as undergoing a drug and alcohol assessment, and a psychological assessment. On April 17, 2000, a magistrate temporarily suspended appellant's child visitation sessions pending the outcome of the next court hearing.
 {¶ 11} On April 20, 2000, a magistrate ordered appellant to appear at a May 10, 2000, re-evaluation hearing. However, a deputy sheriff was unable to effect personal service of process.
 {¶ 12} Nonetheless, appellant did appear at the May 10, 2000, hearing and moved for a continuance. The court, through a magistrate, rescheduled the re-evaluation hearing for May 16, 2000. On May 16, 2000, the trial court, through a magistrate, appointed attorney Settina to represent appellant.
 {¶ 13} After conducting a May 16, 2000, evidentiary hearing at which appellant apparently was not present, on May 22, 2000, a magistrate rendered a decision, wherein he maintained the trial court's wardship of appellant's children; maintained the temporary placement of appellant's children with FCCS; maintained the FCCS case plan; suspended appellant's visitation with her children; and granted attorney Settina leave to withdraw as appellant's counsel. That same day, the trial court adopted and approved the magistrate's decision.
 {¶ 14} Claiming she was not present at the May 16, 2000, hearing due to a conflicting work schedule, on June 5, 2000, appellant moved the trial court to consider an alternative disposition. On June 13, 2000, the trial court, through a magistrate, appointed attorney Settina to represent appellant.
 {¶ 15} On June 23, 2000, a magistrate dismissed appellant's June 5, 2000, motion after the issue of visitation was apparently resolved.
 {¶ 16} On October 20, 2000, claiming she had stable housing and was able and willing to care for her children, appellant requested custody of her children and moved the trial court for an alternative disposition. On October 24, 2000, a magistrate appointed attorney Edward Parks to represent appellant.
 {¶ 17} On November 29, 2000, after appellant failed to appear at a November 22, 2000, hearing, a magistrate dismissed appellant's October 20, 2000, motion.
 {¶ 18} On January 29, 2001, FCCS moved for a permanent custody order or, in the alternative, for an order granting FCCS continued temporary custody. In an affidavit attached to FCCS' motion, a social worker averred that since FCCS was given temporary custody of appellant's children, appellant had continuously and repeatedly failed to substantially change the conditions that caused appellant's children to be placed outside appellant's home. (January 26, 2001, Affidavit of Elizabeth Petkoff.)
 {¶ 19} A hearing was scheduled for March 29, 2001. Personal service of process via a process server was attempted upon appellant without success. When the process server went to appellant's last known residence, appellant's former boyfriend informed the process server that appellant no longer lived there.
 {¶ 20} The hearing was then rescheduled to May 16, 2001, with service of process by publication effected. On May 8, 2001, attorney Victor Merullo was appointed to represent the interest of Kiara Babbs' putative father.
 {¶ 21} On May 16, 2001, FCCS moved for a continuance to allow for the completion of a home study of the paternal grandmother who lived in North Carolina. Finding good cause to have been shown, the trial court, through a magistrate, rescheduled the hearing to June 28, 2001. On May 18, 2001, a magistrate appointed attorney Robert Storey to represent appellant.
 {¶ 22} On June 28, 2001, FCCS moved for a continuance. Accordingly, the trial court, through a magistrate, rescheduled the hearing to August 13, 2001. Also, on June 28, 2001, Marion Babbs, the maternal grandmother, moved to be joined as a party to the action. Marion Babbs also requested an alternative disposition and an order granting visitation privileges.
 {¶ 23} On August 13, 2001, FCCS moved for a continuance to request a psychological evaluation of Marion Babbs. Accordingly, the trial court, through a magistrate, rescheduled the hearing to September 25, 2001, and ordered Marion Babbs to submit to a mental health evaluation. Additionally, the trial court granted appellant's request to undergo an independent psychological evaluation.
 {¶ 24} On September 25, 2001, because the psychological evaluation of appellant apparently was not complete and because the parties wanted to determine whether Kiara Babbs' paternal grandmother who lived in North Carolina would take action, the parties moved for a continuance. Accordingly, finding good cause shown, the trial court, through a magistrate, rescheduled the hearing to November 15, 2001.
 {¶ 25} On November 15, 2001, the parties moved for another continuance. Finding good cause shown, the trial court, through a magistrate, rescheduled the hearing to December 19, 2001.
 {¶ 26} Following completion of an independent psychological evaluation, on November 30, 2001, appellant moved for a temporary order to allow appellant to visit her children.
 {¶ 27} On December 19, 2001, FCCS moved for another continuance and, accordingly, the hearing was rescheduled to April 26, 2002.
 {¶ 28} On February 15, 2002, appellant moved for a continuance of the hearing scheduled for April 26, 2002. Finding good cause shown, on March 21, 2002, the trial court, through a magistrate, rescheduled the hearing to August 1, 2002.
 {¶ 29} A summons that ordered appellant to appear at the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, was issued. Personal service of process via a process server was attempted upon appellant without success. Apparently appellant had moved a couple of months before the process server attempted personal service of process.
 {¶ 30} On July 22, 2002, appellant informed attorney Robert Storey that she no longer wanted him to represent her and that she would arrange for other counsel. The next day attorney Storey moved to withdraw as appellant's counsel.
 {¶ 31} On August 1, 2002, the trial court conducted a hearing to consider FCCS' January 29, 2001, motion for permanent custody. Neither appellant nor Kiara Babbs' putative father was present at the hearing.
 {¶ 32} At the hearing, attorney Storey requested to withdraw as appellant's counsel. However, prior to being discharged by the court, in an effort to protect appellant's interests, attorney Storey unsuccessfully moved for a continuance. Additionally, at the hearing, attorney Victor Merullo requested, and was granted, leave to withdraw as counsel on behalf of Kiara Babbs' putative father. Also, at the hearing, FCCS requested the court to dismiss a June 28, 2001, motion for alternative disposition. The trial court admitted into evidence a copy of a psychological examination of appellant that FCCS introduced. (See psychological evaluation of appellant by Douglas Pawlarczyk, Ph.D., dated July 14, 2000.)
 {¶ 33} On August 23, 2002, the trial court terminated the parental rights of appellant and Kiara Babbs' putative father and granted permanent custody to FCCS for the purpose of arranging the children's adoption. Additionally, on August 23, 2002, the trial court journalized its August 1, 2002, rulings that allowed attorney Storey and attorney Merullo to withdraw. In its August 23, 2002, judgment, the trial court also dismissed the June 28, 2001, motion for alternative disposition.
 {¶ 34} On December 23, 2002, the trial court, through a magistrate, appointed attorney Thomas Brock to represent appellant. Subsequently, on March 27, 2003, pursuant to Civ.R. 60(B), appellant, through counsel, moved to vacate the trial court's August 23, 2002 judgment. On July 14, 2003, the trial court conducted a hearing to consider appellant's Civ.R. 60(B) motion.
 {¶ 35} On September 11, 2003, pursuant to Civ.R. 60(A), the trial court terminated the parental rights of an unknown father. In its September 11, 2003, judgment, the trial court also ordered that orders from the August 1, 2002, hearing should remain unchanged.
 {¶ 36} On September 15, 2003, appellant moved for an alternative disposition and requested to have FCCS' custody of her children terminated and the children returned to her care. On September 23, 2003, FCCS moved to dismiss appellant's motion for a change in custody. On September 24, 2003, pursuant to Civ.R. 60(B), appellant, through counsel, moved the trial court to vacate its September 11, 2003, judgment.
 {¶ 37} On October 9, 2003, after the trial court did not rule upon appellant's Civ.R. 60(B) motion pertaining to the September 11, 2003, judgment or appellant's motion for a change in custody, appellant appealed the trial court's September 11, 2003, judgment to this court.
 {¶ 38} In her appeal, appellant assigns 13 errors:
I. The Trial Court erred in granting FCC's Motion for Permanent Custody on the basis that the Court lacked jurisdiction in that the Motion for Permanent Custody was not properly served and further that timely, adequate Notice of hearing ["Notice was defective."] was not provided sufficiently in advance of the scheduled court proceeding to afford a reasonable opportunity to prepare in violation of R.C. 2151.414(A) and further in violation of the First, Ninth, and Fourteenth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights,
Sections One, Two, Three, Sixteen, and Twenty with regard to the following grounds: (1) Defective Notice of hearing; (2) Denial of the fundamental rights of timely adequate notice and the reasonable opportunity to prepare; (3) Denial of the fundamental freedom of expression and right of association; (4) fundamental unfairness; and (5) Denial of the equal protection of the laws.
II. The Trial Court erred [at a minimum, Plain Error] in granting FCC's Motion for Permanent Custody on the basis that the motion was not deposed of, and the order journalized, no later than 200 days after the motion was filed in violation of R.C.2151.414(A)(2) and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, ArticleI, Bill of Rights, Sections One, Three, and Twenty and the DueProcess and Equal Protections provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Petitioner's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
III. The Trial Court erred in allowing Appellant's appointed Counsel to withdraw at the hearing that resulted in the termination of Appellant's parental rights in violation of R.C.2151.352 and Juv. R. 4, further in violation of Loc. R. 3(I) of the Franklin County Court of Common Pleas, Domestic Division, further in violation of DR 2-110(A)(2), and further in violation of the First, Ninth, and Fourteenth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights,
Sections One, Two, Three, Sixteen, and Twenty with regard to the following grounds: (1) Denial of the fundamental right as an indigent to counsel; (2) Denial of the fundamental right as an indigent to effective assistance to counsel; (3) Denial of the fundamental freedom of expression and right of association; (4) fundamental unfairness; and (5) Denial of the equal protection of the laws.
IV. The Trial Court erred [at a minimum, Plain Error] in terminating Appellant's parental rights in that R.C. 2151.413 and2151.414, facially and as applied to Appellant, are unconstitutional and therefore void on the basis that the statutory provisions create discriminant classifications, those who suffer the loss of their children to permanent custody and those who retain their rights under R.C. 2151.413 and 2151.414 as well as other parents who in custodial proceedings, i.e., Title 31 of the Ohio Rev. Code, maintain their parental rights even in the extreme circumstance of parental unfitness, with disproportionate treatment that do not meet the stringent requirements of the Strict Scrutiny test pursuant to Troxel v.Granville (2000), 530 U.S. 57, violation of the First, Ninth, and Fourteenth, both Due Process and Equal Protection
Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article I, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) "per se" overbroad; (3) Arbitrary, invidious, discriminatory, and capricious; (4) Fundamental unfairness; and (5) Denial of the equal protection of the laws.
V. The Trial Court erred [at a minimum, Plain Error] in terminating Appellant's parental rights in that R.C. 2151.413 and R.C. 2151.414, in whole, and, in part, R.C. 2151.414 (B)(1), facially and as applied to Appellant, are unconstitutional and therefore void under the United States and Ohio Constitutions on the basis that the statutory provisions place primary emphasis on the best interest of the child in all permanent custody proceedings in contravention of Troxel v. Granville (2000),530 U.S. 57, 65-66, 68-69, 87 [Stevens, J., dissenting]; further in contravention of Santosky v. Kramer (1982), 455 U.S. 745, 759; and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights,
Sections One, Three, and Twenty and the Due Process
and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws.
VI. The Trial Court erred [at a minimum, Plain Error] in terminating Appellant's parental rights in that R.C.2151.414(B)(1)(a) (d), facially and as applied to Appellant, are unconstitutional and therefore void under the United States and Ohio Constitutions on the basis that the statutory provisions create an irrebuttable presumption of parental unfitness in violation of Appellant's fundamental rights pursuant to the First
and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection
provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness and Overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws.
VII. The Trial Court erred [at a minimum, Plain Error] in granting the motion of FCCS for permanent custody on the basis that the court did not appoint separate counsel for the children for purpose of representation during the proceedings as mandated by Juv. R. 2(X); Juv. R. 4(A); and R.C. 2151.352 and further as mandated by the United States and Ohio Constitutions. Thus, Appellant's fundamental rights were violated pursuant to theFirst, Ninth, and Fourteenth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights,
Sections One, Two, Three, Sixteen, and Twenty with regard to the following grounds: (1) Denial of the fundamental right to Counsel for the children; (2) Denial of the fundamental freedom of expression and right of association; (3) fundamental unfairness; and (4) Denial of the equal protection of the laws.
VIII. The Trial Court erred in finding that an award of permanent custody was in the best interests of the children pursuant to R.C. 2151.414(D) and further as amplified by In reSwisher, Franklin App. Nos. 03AP-1408 and 03AP-1409, 2003-Ohio-5446.
IX. The Trial Court erred [at a minimum, Plain Error] in terminating Appellant's parental rights, in that (1) the Trial Court failed to make an express finding of parental unfitness regarding Appellant and further (2) FCCS failed to overcome the presumption that Appellant is a fit parent pursuant to Troxel v.Granville (2001) [sic], 530 U.S. 57, 65-66, 68-69, and further in violation of Appellant's fundamental rights pursuant to theFirst and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection
provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
X. The Trial Court erred [at a minimum, Plain Error] in admitting hearsay evidence introduced by FCCS in violation of Ohio Statutory Law, Ohio R. Evid. 801 802 [Accord In re:Vanecisha McLemore (March 20, 2001), Franklin App. No. 00AP-974, p. 7-8, unreported; St. Paul Fire Marine v. Ohio Fast Freight
(Franklin 1982), 8 Ohio App.3d 155, 157, 456 N.E.2d 551, 553], and further in violation of Appellant's fundamental rights pursuant to the First, Ninth, and Fourteenth Amendments of the United States Constitution and the Ohio Constitution, Article I,Bill of Rights, Sections One, Two, Three, Sixteen, and Twenty with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
XI. The decision of the Trial Court is against the weight of evidence in accordance with the Due Process and EqualProtection provisions of the United States and the Ohio Constitutions in light of Troxel v. Granville (2000),530 U.S. 57 and further in light of In re: Vanecisha McLemore (March 20, 2001), Franklin App. No. 00AP-974, unreported.
XII. The decision of the Trial Court is not supported by sufficient probative evidence in accordance with the DueProcess and Equal Protection provisions of the United States and the Ohio Constitutions in light of Troxel v. Granville
(2000), 530 U.S. 57 and further in light of In re. VanecishaMcLemore (March 20, 2001), Franklin App. No. 00AP-974,unreported.
XIII. Appellant's appointed counsel was ineffective in failing to represent Appellant as set forth under Assignment [sic] of Error Nos. 1-12 at the trial court level in violation of Appellant's fundament rights pursuant to the First, Sixth, Ninth, and Fourteenth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Two, Three, Ten, Sixteen, and Twenty with regard to the following grounds: (1) Denial of the fundamental right as an indigent to effective assistance of counsel; (2) Denial of the fundamental freedom of expression and right of association; (3) fundamental unfairness; and (4) Denial of the equal protection of the laws.
 {¶ 39} As a preliminary matter, FCCS argues appellant lacks standing to appeal the trial court's September 11, 2003, judgment because this judgment terminated an unknown father's parental rights, not appellant's parental rights that were terminated by the court's August 23, 2002, judgment.
 {¶ 40} For her part, appellant contends the salient issue is not standing but, whether the trial court's August 23, 2002, judgment, which terminated appellant's parental rights, was a final appealable order. Because the rights of all parties were not fully adjudicated until the trial court's September 11, 2003, judgment and because the August 23, 2002, judgment lacked Civ.R. 54(B) language, appellant argues the September 11, 2003, judgment, not the August 23, 2002, judgment, constitutes a final appealable order.
 {¶ 41} In Mogavero v. Lombardo (Sept. 25, 2001), Franklin App. No. 01AP-98, this court previously held:
To determine whether a judgment is final, an appellate court engages in a two-step analysis. First, an appellate court must determine if the order is final pursuant to R.C. 2505.02. If an appellate court determines that the order complies with R.C.2505.02 and is final, then the court must determine if Civ.R. 54(B) language is required. * * * To be a final appealable order, a court must meet the requirements of both R.C. 2505.02 and Civ.R. 54(B), if applicable. * * *
 {¶ 42} Here, the trial court's August 23, 2002, judgment was a final order pursuant to R.C. 2505.02(B). See, generally, R.C.2505.02(B)(1) (final order is "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment"). However, the trial court's August 23, 2002, judgment did not determine the rights of all parties because it did not determine whether the parental rights of an unknown father should have been terminated.
 {¶ 43} Moreover, the trial court's August 23, 2002, judgment also lacked Civ.R. 54(B) language. See, generally, Civ.R. 54(B) ("court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay").
 {¶ 44} Accordingly, we must conclude the trial court's August 23, 2002, judgment was not a final appealable order. See ChefItaliano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, syllabus ("[a]n order of a court is a final, appealable order only if the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02 are met"). See, also, In re Kincaid (Oct. 27, 2000), Lawrence App. No. 00CA3 ("we do not interpret R.C.2151.414 to permit the piecemeal adjudication of parental rights in permanent custody proceedings. R.C. 2151.414 provides for the award of permanent custody of a child to a children services agency and the permanent termination of the rights of both parents. The statute specifically requires the juvenile court to find that `the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents.' [Emphasis added.] R.C. 2151.414[B][1]").
 {¶ 45} Having found the trial court's August 23, 2002, judgment was not a final appealable order, we therefore conclude the trial court's September 11, 2003, judgment that determined the parental rights of all parties constituted a final appealable order. Therefore, we find appellant's appeal of the trial court's September 11, 2003, judgment is properly before this court.
 {¶ 46} Appellant's first assignment of error asserts the FCCS' motion for permanent custody was not properly served and appellant lacked adequate notice of hearing.
 {¶ 47} On January 29, 2001, FCCS moved for a permanent custody order or, in the alternative, for an order granting FCCS continued temporary custody. A hearing was scheduled for March 29, 2001, but the hearing was rescheduled to May 16, 2001, because personal service of process could not be effected upon appellant. Consequently, service of process by publication was made on April 19, 2001.
 {¶ 48} As litigation progressed, the trial court granted many other continuances. On March 21, 2002, finding good cause shown, the trial court, through a magistrate, rescheduled the hearing to August 1, 2002. Personal service of process via a process server was attempted upon appellant without success. The clerk of courts did, however, mail a notice of hearing to appellant.
 {¶ 49} On August 1, 2002, the trial court conducted a hearing concerning FCCS' motion for permanent custody. At this hearing, attorney Storey, appellant's court-appointed attorney, informed the court that on July 22, 2002, Storey had a telephone conversation with appellant. During this telephone conversation appellant informed Storey that she no longer wanted Storey to represent her. (Tr. 4, August 1, 2002, hearing.) Nonetheless, to protect appellant's interests, Storey attended the August 1, 2002, hearing and unsuccessfully moved for a continuance of the matter.
 {¶ 50} At the August 1, 2002, hearing, after attorney Storey was discharged by the trial court, FCCS' counsel requested the court to "make a specific finding that Miss Pamela Babbs had a specific notice of this hearing through her attorney and through her attorney's actions * * *." (Tr. 9, August 1, 2002, hearing.) The trial court so found. Id.
 {¶ 51} Although the trial court found appellant had a specific notice of the August 1, 2002, hearing through her attorney and through her attorney's actions, we find no evidence in the record to support such a finding. At the August 1, 2002, hearing, attorney Storey only informed the trial court that appellant had discharged him; attorney Storey did not inform the trial court that he had given appellant specific notice about the August 1, 2002, hearing.
 {¶ 52} Furthermore, at a July 14, 2003, hearing to consider appellant's Civ.R. 60(B) motion, appellant testified on cross-examination as follows:
Q. Now Mr. Storey informed you about the August 1st hearing date did he not, of 2002?
A. (Non-verbal response).
Q. And you're shaking your head yes?
A. Yeah. But he told me to go to the wrong floor. That's why I was on the third floor instead of the sixth floor where I was supposed to be to fight for my children. See I want custody of my children —
(Tr. 39, July 14, 2003, hearing.)
 {¶ 53} "[A] parent's desire for and right to `the companionship, care, custody and management of his or her children' is an important interest that `undeniably warrants deference and, absent a powerful countervailing interest, protection.'" Lassiter v. Dept. of Social Serv. of Durham Cty.,N. Carolina (1981), 452 U.S. 18, 27, 101 S.Ct. 2153, quotingStanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208. Therefore, "[a] parent's interest in the accuracy and injustice of the decision to terminate his or her parental status is, therefore a commanding one." Lassiter, at 27. (Footnote omitted.) See, also, In re Hayes (1997), 79 Ohio St.3d 46, 48, reconsideration denied, 79 Ohio St.3d 1492, quoting In re Smith
(1991), 77 Ohio App.3d 1, 16 (observing that in cases pertaining to permanent termination of parental rights "parents `must be afforded every procedural and substantive protection the law allows'").
An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information * * * and it must afford a reasonable time for those interested to make their appearance * * *.
Mullane v. Cent. Hanover Bank Trust Co. (1950),339 U.S. 306, 314, 70 S.Ct. 652. (Citations omitted.) See, also,Dusenbery v. United States (2002), 534 U.S. 161, 167,122 S.Ct. 694 (finding Mullane supplied the appropriate analytical framework for the Federal Bureau of Investigation to provide notice to federal prisoner of his right to contest the administrative forfeiture of property seized during the execution of a search warrant for the residence where he was arrested).
 {¶ 54} Appellant contends she lacked adequate notice because a notice of hearing instructed appellant to go to courtroom 60, which does not exist. See trial court entry filed March 21, 2002 (indicating hearing rescheduled to August 1, 2002, at 9:00 a.m. in courtroom 60); clerk's copy of hearing notice to Pamela Babbs filed March 22, 2002 (indicating hearing rescheduled to August 1, 2002, at 9:00 a.m. in courtroom 60).
 {¶ 55} At the July 14, 2003, hearing to consider appellant's Civ.R. 60(B) motion, Susan Laughlin-Schopis, guardian ad litem for appellant's children, argued before the trial court that:
Mother * * * claims ignorance as to where courtroom 60 is, the Court is aware that standard operating procedure here in Franklin County when we have a visiting judge that the notice indicates courtroom 60. All counsel are aware that courtroom 60 means that one reports to the 6th floor assignment office to find out what courtroom the visiting judge has been assigned for that day. Mr. Storey is aware of that, he is once again, competent counsel and certainly would have informed his client as to that — [.]
(Tr. 27, July 14, 2003, hearing.)
 {¶ 56} Although appellant's former counsel may have known of local custom concerning the designation of courtroom 60 in a notice of hearing, there is no evidence to support a reasonable inference that attorney Storey informed appellant to report to the sixth floor assignment office or that appellant, who had discharged her attorney prior to the August 1, 2002, hearing, knew she was to report to the sixth floor assignment office. Indeed, at the July 14, 2003, hearing, appellant testified attorney Storey told her to go to the wrong floor.
 {¶ 57} Thus, the issue resolves to whether the notice of hearing provided to appellant was "of such a nature as reasonably to convey the required information" as required by due process with due regard to the liberty issue at stake. See Mullane, at 314.
 {¶ 58} Here, because the notice directed appellant to a non-existent courtroom, we must conclude the notice provided to appellant failed to reasonably convey required information, namely, the correct location of the courtroom where the permanent custody hearing was to be held on August 1, 2002. See id. Cf. Inre Jones (Nov. 22, 2000), Cuyahoga App. No. 76533 (finding due process requirements were not met where publication by notice failed to correctly identify the name of the child and failed to identify the correct case number).
 {¶ 59} Rather than instruct appellant to report to a non-existent courtroom, the trial court should instruct a party to report to the assignment office prior to the scheduled starting time of the hearing assigned to a visiting judge. The assignment office, in turn, could then inform the party in which courtroom a visiting judge would hear the case.
 {¶ 60} Thus, because appellant's due process rights were violated as the result of the trial court's failure to give adequate notice, we find the trial court erred in terminating appellant's parental rights.
 {¶ 61} Accordingly, appellant's first assignment of error is sustained.
 {¶ 62} Having found the trial court erred when it terminated appellant's parental rights without providing appellant with adequate notice, we find appellant's second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth assignments of error pertaining to alleged errors at the August 1, 2002, hearing, or in the trial court's journalization of the August 1, 2002, hearing, are rendered moot. Therefore, we do not consider these assignments of error here.
 {¶ 63} In summary, having sustained appellant's first assignment of error concerning adequate notice, and having found the remainder of appellant's assignments of error are moot, we hereby reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. Furthermore, we remand this cause to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
Bryant and Bowman, JJ., concur.