[Cite as *Angus v. Angus*, 2014-Ohio-4225.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Sarah Angus,                                                 :

      Plaintiff-Appellee,                          :

v.                                                                    :          Nos.   14AP-22
                                                                                  and    14AP-159
Larry Angus, Jr.,                                          :          (C.P.C. No. 11DR-10-4018)

      Defendant-Appellant.                      :          (REGULAR CALENDAR)

---

D E C I S I O N

Rendered on September 25, 2014

---

*Larry Angus, Jr.,* pro se.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

TYACK, J.

{¶ 1}  Defendant-appellant, Larry Angus, Jr., appeals from two orders of the Franklin County Court of Common Pleas, Division of Domestic Relations.  In case No. 14AP-22, Mr. Angus appeals from the decree of divorce terminating his marriage to plaintiff-appellee, Sarah Angus, now restored to her maiden name of Sarah Ice ("Ms. Ice"); in case No. 14AP-159, Mr. Angus appeals from the trial court's subsequent order denying some of his post-decree motions, principally concerning custody matters and the magistrate's refusal to recuse herself from further proceedings. We have consolidated the appeals for briefing and argument.

{¶ 2}  Although the divorce decree and subsequent proceedings addressed the usual array of matters connected with terminating a marriage, the only issues raised in

the present appeals concern custody and parentage issues related to Ms. Ice's five children.

{¶ 3}   We begin with a brief review of the uncontested facts developed at trial before the domestic relations court magistrate.  Ms. Ice and Mr. Angus began dating in 2003, moved in together in 2004, and were married on June 20, 2007 in Franklin County.  Ms. Ice bore two children prior to the marriage: "Alexis" born in 2004 and "Brian" born in 2006.  In the early stages of her relationship with Mr. Angus, and thus around the time of conception for Alexis, Ms. Ice maintained an intimate relationship with another man, Keith Taylor.  Mr. Angus, believing that he was the biological father of Alexis, filed an affidavit indicating that he was the father.

{¶ 4}   After the parties married and before their eventual separation, Ms. Ice bore two more children: "Charles" in 2008 and "Danielle" in 2009.  The parties' relationship was a tempestuous one, marked by repeated separations in its latter stages.  In 2013, while still married, Ms. Ice gave birth to "Erica" as a result of a rekindled relationship with Keith Taylor.  While paternity for Alexis presents a disputed issue in the present appeal, there is no dispute of the trial court's ultimate attribution of Erica's paternity to Mr. Taylor.

{¶ 5}   Ms. Ice filed for divorce on October 17, 2011, proceeding pro se, and eventually filed an amended complaint after obtaining representation.  The matter proceeded to trial over three days in June 2013, with Ms. Ice represented by counsel and Mr. Angus proceeding pro se.  On September 30, 2013, the magistrate who heard the evidence rendered a decision disposing of all issues in the divorce.  Pertinent to the present appeal, the magistrate addressed the paternity of Ms. Ice's five children and allocated custody of all to Ms. Ice.  The magistrate recommended various ongoing restrictions upon Mr. Angus's conditions of visitation for the children who were biologically linked to Mr. Angus.

{¶ 6}   With respect to Alexis, the magistrate noted that DNA testing excluded Mr. Angus as the father.  Mr. Taylor had not submitted to DNA testing for purposes of establishing Alexis's paternity.  Ms. Ice had, at one time, maintained that Mr. Angus was Alexis's father.  By the trial date, Ms. Ice and Mr. Taylor maintained that Mr. Taylor was in fact the father of Alexis.  The magistrate noted that DNA testing excluded Mr. Angus as

the male parent of Alexis and therefore deemed that the presumption of paternity based on Mr. Angus's paternity affidavit was rebutted. As a result, Mr. Angus was disestablished as the father of Alexis and the magistrate indicated that Mr. Taylor should be legally established as the father of Alexis. Mr. Angus has standing to contest the termination of his relationship with Alexis, but no standing to contest the issue of who is the male parent once his parentage has been disproved.

{¶ 7}   With respect to Brian, Charles, and Danielle, the magistrate determined that Mr. Angus would maintain his previously established paternity. Mr. Angus made no claim of paternity for the youngest child, Erica. Therefore, the magistrate indicated that all parties agreed that Mr. Taylor should be established as her legal father.

{¶ 8}   Mr. Angus filed objections to the magistrate's decision and the trial court overruled them by decision rendered December 11, 2013. Mr. Angus then filed a series of motions before the magistrate and trial court centering upon accusations of bias on the part of the magistrate and/or judge. These accusations were heard before the judge on February 12, 2014, and the judge declined to recuse herself. Mr. Angus then filed his second notice of appeal on February 25, 2014.

{¶ 9}   Mr. Angus brings the following 20 assignments of error in his two appeals:

> [I.] Violation of U.S. Constitution. United States v. Sciuto, 521 F.2d 842 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.")
>
> [II.] 28 U.S. Code § 455 – Disqualification of justice, judge, or magistrate judge (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> [III.] Due Process By Denying Defendant's Witness To Be Seen One Kendrick Antwine
>
> [IV.] OHIO CODE OF JUDICIAL CONDUCT
> (Effective March 1, 2009; as amended January 1, 2013)
> Canon 2 A judge shall perform the duties of judicial office impartially, competently, and diligently.
> RULE 2.2 Impartiality and Fairness

[V.] OHIO CODE OF JUDICIAL CONDUCT
(Effective March 1, 2009; as amended January 1, 2013)
Rule 2.6 Bias, Prejudice, and Harassment

[VI.] OHIO CODE OF JUDICIAL CONDUCT
(Effective March 1, 2009; as amended January 1, 2013)
Rule 2.6 Ensuring the Right to be Heard

[VII.] Right To Parent, Fundamental Right To Parent

[VIII.] Ohio CODE OF JUDICIAL CONDUCT
(Effective March 1, 2009; as amended January 1, 2013)
Rule 3.3 Testifying as a Character Witness

[IX.] **2921.22 Failure to report a crime** or knowledge of a death or burn injury.

[X.] **2921.44 Dereliction of duty.**

[XI.] **3113.31 Domestic violence definitions** – hearings.

[XII.] **2903.211 Menacing by stalking**.

[XIII.] **2151.031 Abused child defined**.

[XIV.] **2919.22 Endangering children**.

[XV.] **R.c. 2151.03 (A)(2) And (6) Neglected Child (Four Counts)**

[XVI.] **2921.45 Interfering with civil rights**.

[XVII.] Fundamental Right To Be Loved, Receive affection, and Right To contact with the other parent

[XVIII.] Child's Right Free From Cruel And Unusual Punishment

[XIX.] Route: Ohio Revised Code >> GENERAL PROVISIONS >> Chapter 3: OFFICER; OATHS; BONDS

[XX.] U.S. Code > Title 18 > Part I > Chapter 13 > § 242
18 U.S. Code § 242 – Deprivation of rights under color of law.

{¶ 10}  Many of the above "assignments of error" really are not proper assignments of error.  Still we will address the issues presented.  Mr. Angus's first, second, fourth, fifth, sixth, eighth, ninth, tenth, nineteenth, and twentieth propositions treated as assignments of error set forth above, collectively address various aspects of what Mr. Angus believes to be persistently unfair treatment of him by the magistrate, judge, and guardian ad litem in these proceedings.  We have conducted a full review of the record in this matter, including the various orders rendered by the court, the filings of the parties, and a partial transcript available to us, and find no evidence of bias on the part of the court officers or any other state participants in this action.  Since the record comprehensively establishes the poor relationship between Mr. Angus on the one hand and Ms. Ice and Mr. Taylor on the other, it is clear that animosity has colored the proceedings.  However, the actions and pronouncements of the trial court in this case reveal nothing other than good-faith efforts on the part of the court system to arrive at the best outcome possible for all parties, especially the children.  The case has resulted in an unsatisfactory outcome from Mr. Angus's point of view; however, in domestic relations cases, an outcome which displeases a party is not evidence of bias or prejudice, but is a result of a process that inevitably imposes hard choices upon an adjudicatory body.

{¶ 11} Having found no evidence of bias, prejudice or delinquency on the part of the magistrate and judge in the Franklin County Court of Common Pleas, Division of Domestic Relations, we overrule Mr. Angus's first, second, fourth, fifth, sixth, eighth, ninth, tenth, nineteenth, and twentieth propositions, treated as assignments of error.

{¶ 12} Mr. Angus's eleventh, twelfth, thirteenth, fourteenth, and fifteenth propositions assert that the trial court's resolution of custody and parentage issues placed the children at physical and emotional risk and that the court's decision in this respect is against the weight of the evidence heard at trial.  Mr. Angus specifically points to the fact that the record contains evidence that Mr. Taylor was the object of a civil protection order involving threats and physical acts towards a former girlfriend and the young child he fathered.  Mr. Angus asserts that the trial court unfairly ignored this information, which was available to the guardian ad litem and expressed in the guardian ad litem's report, and focused instead on a prior incident several years before in which Mr. Angus, while watching his children, had contacted Franklin County Children's Services and requested

assistance because he felt overwhelmed and feared that he would harm his own children. Mr. Angus also points out that the guardian ad litem's report quoted statements from Ms. Ice that she had never witnessed Mr. Angus mistreat their children. He also emphasizes that the guardian reported on various difficulties experienced by school authorities in dealing with Ms. Ice when addressing the children's educational needs.

{¶ 13} Mr. Angus also asserts that the trial court noted that both he and Ms. Ice faced mental health challenges. Mr. Angus claims that the court considered only Mr. Angus's challenges in this respect would be held against him. As a result, he feels the court ignored Ms. Ice's history when granting her custody of the children. Mr. Angus further protests that the court unfairly expressed reservations about his parenting ability because Mr. Angus does not currently have either a driver's license or automobile, and relies on public transportation or rides from friends in order to attend hearings and supervised visitation with his children at the Buckeye Ranch.

{¶ 14} We find that the trial court's decision does not unfairly or improperly disregard any of the evidence. The court carefully noted the array of positives and negatives associated with each parent, and, as a domestic relations court often must, made an attribution of parental rights that was governed by the best options before the court, not the ideal options to which society might aspire. The court's conclusions do not reflect an absolute prejudice against non-driving parents, persons facing some degree of mental illness or challenge, or any absolute abdication in the face of unresolvable animosity between the parties. These factors may weigh in the court's decision, but the court would have been equally remiss in failing to consider them. In sum, we find that the court's decision with respect to custody and parental rights is not against the manifest weight of the evidence, and we overrule Mr. Angus's eleventh, twelfth, thirteenth, fourteenth, and fifteenth propositions treated as assignments of error.

{¶ 15} Mr. Angus's third proposition asserts that he was deprived of due process when not allowed to call a witness at trial. Mr. Angus's brief on appeal does not develop the proposed testimony for the witness or present argument as to how his case was prejudiced by the absence of this testimony. We accordingly overrule Mr. Angus's third proposition, treated as an assignment of error.

{¶ 16} Mr. Angus's seventh, sixteenth, seventeenth, and eighteenth propositions focus on the deprivation of parental rights that resulted when the court disestablished Mr. Angus's paternity for Alexis and established paternity for Mr. Taylor. Mr. Angus asserts that termination of his parental rights and vesting of those rights in Mr. Taylor constituted a loss of his fundamental right to parentage that entitled him to heightened due process and effective representation by legal counsel throughout the course of proceedings.

{¶ 17} Mr. Angus stresses that, as a result of his mistaken parentage affidavit, he carried the legal status of father for Alexis from her birth through the recent disestablishment of paternity.  For a while, Ms. Ice declared Mr. Angus the father.  That coupled with his affidavit led to his name appearing on Alexis's birth certificate.  Mr. Angus executed an acknowledgement of paternity by affidavit under R.C. 3111.25.  Such an acknowledgement of paternity becomes final without ratification of a court when the acknowledgement has been entered into the birth registry and a 60-day time period for rescission under R.C. 3119.27 has passed.  Mr. Angus further points out that in addition to his being deemed the legal father, he acted as father in practice for Alexis prior to and during the course of the marriage.

{¶ 18} Mr. Angus is correct when he points out that parents have a constitutionally protected liberty interest in the care, custody, and management of their children.  *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re Murray*, 52 Ohio St.3d 155, 157 (1990). The due process rights extended on the basis of this fundamental right, however, do not (unlike proceedings carrying a risk of loss of physical liberty) automatically mandate the appointment of counsel for an indigent litigant. *Lassiter v. Dept. of Social Servs. of Durham Cty. N. Carolina,* 452 U.S. 18, 24-25 (1981); *In re A.N.B.*, 12th Dist. No. CA2012-12-017, 2013-Ohio-2055.  The procedural due process to be afforded such a litigant, therefore, is assessed according to the facts and posture of the case under the established three-part standard comprised of (1) the private interest at stake, (2) the government interest, and (3) the risk of error. *Lassiter* at 27, citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *In re Babbs*, 10th Dist. No. 03AP-1011, 2004-Ohio-583.

{¶ 19} Accordingly, Ohio's statutes governing juvenile and domestic court proceedings provide a right to appointed counsel only for specifically defined proceedings, generally when the state is the initiating and primary actor in a proceeding that will result in a termination of parental rights.  Most commonly, this reflects a permanent commitment to custody initiated by a children's services agency.  *See, e.g., In re C.P.*, 10th Dist. No. 09AP-823, 2010-Ohio-346, ¶ 14.  This right to counsel is specifically delineated, for juvenile court proceedings at R.C. 2151.352 and Juv.R. 4(A).  *Id.*  There is no authority in Ohio for a right to counsel in a proceeding where the state is not the initiating entity and the parentage dispute merely reflects proceedings between individual parties.  *See*, e.g., *In re Adoption of M.C.*, 4th Dist. No. 11CA5, 2011-Ohio-6527.

{¶ 20} The domestic relations court had jurisdiction over the present proceedings under R.C. 3111.06:

> If an action for divorce, dissolution, or legal separation has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties.

This section and related sections of the code contain no provision for a right to legal representation in such matters.  Likewise, while the juvenile court has concurrent jurisdiction pursuant to R.C. 2151.23(B)(2) "[t]o determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.18 of the Revised Code,"   the right to counsel is explicitly excluded under that section from the general right to counsel granted by R.C. 2151.352(A).

{¶ 21} Because the state was not the initiating party in the deprivation of parental rights, and we find no statutory or constitutional right to counsel in the proceedings as presented in this case, Mr. Angus's seventh, sixteenth, seventeenth, and eighteenth propositions, treated as assignments of error, are overruled.

{¶ 22} In summary, Mr. Angus's 20 propositions treated as assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.
CONNOR, J., concurs in part and dissents in part.

CONNOR, J., concurring in part and dissenting in part.

{¶ 23}  I concur with the majority's disposition of the greater part of this appeal, but am unable to agree with the court's conclusion that Mr. Angus did not have a right to legal representation for some aspects of the proceedings.  While I agree with the majority's conclusion that Ohio's statutory framework did not provide an express right to counsel in this case, I dissent on the basis that such an examination of directly pertinent statutes is not the end of the due process inquiry.  I believe that a constitutional right to counsel to protect the fundamental right of a parent to the custody and care of his or her children extends to some cases in which the state has not initiated the parental deprivation.

{¶ 24}  I begin by emphasizing that this case is not one in which the court is called upon to legally allocate paternity for the first time, but instead one in which an established father faced the loss of his legally long-established paternal status. It is undisputed that Mr. Angus not only assumed the practical day-to-day role of father to Alexis, but held uncontroverted legal status as the child's father for seven years or more.  Mr. Angus's name appeared on the birth certificate, the child bore his name, and he was eventually married to the child's mother.  He executed an acknowledgement of paternity under R.C. 3111.23, which was never rescinded and thus became a final and enforceable determination of parentage, rather than a mere presumption of paternity under R.C. 3111.03.  R.C. 3111.25; R.C. 3111.26; *In re Guardianship of Elliott*, 3d Dist No. 12-10-02, 2010-Ohio-5405.

{¶ 25} As acknowledged by the majority, the parental right to raise one's child is a fundamental liberty interest protected by the due process clause of the Fourteenth Amendment.  *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).  "[T]he interest of parents in the care, custody, and control of their children * * * is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  While a parent's natural rights are limited by considerations arising out of the ultimate welfare of the child, *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979),

termination of such parental rights are " 'the family law equivalent of the death penalty in a criminal case.' "  *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991).  Parents in such cases must be afforded every procedural and substantive protection the law allows.  *In re C.G.*, 10th Dist. No. 13AP-632, 2014-Ohio-279, ¶ 28; *In re D.C.*, 10th Dist. No. 08AP-1010, 2009-Ohio-2145, ¶ 8.

{¶ 26} While *Lassiter v. Dept. of Social Servs. of Durham Cty. N. Carolina,* 452 U.S. 18, 24-25 (1981) admittedly does not mandate a right to counsel in all parentage actions, the Supreme Court just as clearly implied that such a right might arise in some cases based upon a balancing of the due process factors of *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the Eldridge factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the Eldridge factors will not always be so distributed, and since "due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed," *Gagnon v. Scarpelli*, 411 U.S., at 788, 93 S.Ct., at 1762, neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon v. Scarpelli*, and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review. See, *e. g., Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220.

*Lassiter* at 31-32.

{¶ 27} In the absence of legal counsel for Mr. Angus, numerous legal issues were never coherently raised before the trial court. For one, there is some question whether parentage of Alexis was ever properly raised in this action via a motion for relief from paternity under R.C. 3119.961, and thus whether the court considered the requisite conditions and bars to relief under R.C. 3119.962.  Secondly, an exclusionary DNA sample, such as we have in the present case, is not dispositive in that it does not of itself

compel a termination of parental rights.  Innumerable cases under former Ohio law have looked to the best interest of the child and denied petitions by fathers to terminate their parental obligations, even where relief was sought based upon belated DNA refutation of the father's supposed paternity.  Even after the legislature modified applicable law to reflect the widespread advances in reliable and affordable genetic testing, it saw fit to include under R.C. 3119.962 various exceptions under the clarified standards for relief from a prior paternity determination. There is thus no inevitable legal outcome in this case that would somehow negate Mr. Angus's right to counsel.

{¶ 28} I also am concerned that the trial court was more than willing to acknowledge the limitations upon Mr. Angus's parental abilities resulting from his mental health issues, yet did not consider whether those same limitations made it improbable that he could adequately defend his protected parental interests while proceeding pro se. Under the *Eldridge* factors, this introduced a substantial probability of erroneous results from the proceedings.

{¶ 29} In sum, I believe that the applicable controlling case law from the United States Supreme Court and the Supreme Court of Ohio dictates an appointment of counsel in the present case.  I believe that Mr. Angus was not accorded a sufficient measure of due process in keeping with the importance of his constitutionally protected rights as a parent when the court terminated Mr. Angus's legal status as the father of Alexis and accorded that status to Mr. Taylor.  I respectfully dissent in part.

_____