[Cite as *State v. Brown*, 2014-Ohio-314.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-349 |
| v. | : | (C.P.C. No.12CR-07-3506) |
| Ta'Sean Brown, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 30, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton,* for appellee.

*Timothy Young,* Ohio Public Defender, and *Brooke M. Burns,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Ta'Sean Brown ("appellant"), appeals from his conviction of burglary, a felony of the second degree, entered by the Franklin County Court of Common Pleas, General Division. Appellant contends that the general division of the common pleas court ("adult court") did not possess subject-matter jurisdiction of his case in that he was a juvenile at the time the alleged burglary was committed, burglary is not a mandatory bindover offense, and the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("juvenile court") did not conduct an amenability hearing before transferring the case to the general division.

{¶ 2} We agree. We therefore remand the case to the trial court with instructions to transfer the burglary case to the juvenile court for further proceedings.

**I. Facts and Case History**

{¶ 3}   On April 9, 2012, police filed a complaint in the juvenile court, alleging that appellant had, on that same date, committed aggravated robbery in that he had committed a theft offense while indicating to the victim that he had a firearm in his possession. The offense, if committed by an adult, would have been a felony of the first degree. The alleged victim was another minor who subsequently testified that, on that same day, appellant and two other individuals had stolen his bicycle and an iPad from him and that, during the incident, appellant had indicated that he had a gun concealed in the pocket of his hoodie.  The victim, however, never saw a gun.

{¶ 4}   The aggravated robbery case proceeded in the juvenile court as case No. 12JU-5040. As will be discussed in more detail below, the juvenile court ultimately transferred this case to adult court pursuant to the mandatory juvenile bindover statute, R.C. 2152.10(A)(2), and the state ultimately dismissed the charge.

{¶ 5}   On April 9, 2012, the state filed a second complaint against appellant, which proceeded in the juvenile court as case No. 12JU-5662. The second complaint alleged that appellant had, on April 5, 2012, committed burglary in violation of R.C. 2911.12(A)(1), a charge which, if committed by an adult, would constitute a felony of the second degree. The complaint alleged that appellant had opened an unlocked rear window of a residence and entered the residence with the intent to commit theft.

{¶ 6}   The burglary offense did not fall within the scope of the mandatory juvenile bindover statute. However, pursuant to the discretionary bindover statute, R.C. 2152.10(B), the state moved the juvenile court to relinquish its jurisdiction and transfer appellant to the adult court for prosecution of the burglary charge as an adult.

{¶ 7}   On July 12, 2012, the juvenile court conducted sequential probable cause hearings in the two cases.  The parties stipulated that appellant was a minor.  At the close of the hearing in case No. 12JU-5040, the juvenile court found probable cause that appellant committed the aggravated robbery of which he was charged, set bond at $100,000, observed that the aggravated robbery charge was subject to the mandatory bindover statute,  and ordered that the case be transferred to adult court.

{¶ 8}   The court then immediately proceeded to determine the existence of probable cause in the burglary case, case No. 12JU-5662. At the conclusion of that

hearing, the juvenile court found probable cause that appellant had committed the home burglary. The court then stated:

> Ordinarily an F-2 burglary would be a discretionary bindover, but as the Court has previously tried an aggravated robbery case, found probable cause in a mandatory bindover and [has] bound [appellant] over, the Court is going to dispense with a pre-sentence investigation and amenability hearing and bind [appellant] over to be tried as an adult on this charge of burglary under subsection (F) of [R.C. 2152.12].

(July 12, 2012 Tr., 36.)

{¶ 9} On July 16, 2012, and consistent with its statement at the conclusion of the probable cause hearing, the juvenile court entered judgment in case No. 12JU-5662, stating:

> Pursuant to Section 2152.12(F) after having mandatorily bound over [appellant] in [case No.] 12JU-04-5040, the court is not required to consider or weigh [any] factors and may transfer jurisdiction.
>
> Therefore, it is ordered that this court relinquish jurisdiction over this matter and that this matter be transferred to the General Division of the Common Pleas Court of Franklin County for criminal prosecution of [appellant] as an adult.

(July 16, 2012 Judgment Entry.)

{¶ 10} Accordingly, both case No. 12JU-5040 (aggravated robbery) and case No. 12-JU-5662 (burglary) were transferred to adult court, where the Grand Jury issued two indictments, and the cases proceeded under separate adult court case numbers. In the first indictment in case No. 12CR-3505, appellant was charged with two counts of aggravated robbery[1] and five other lesser offenses. In the second indictment in case No. 12CR-3506, appellant was charged with one count of burglary and one count of theft.

{¶ 11} On March 4, 2013, appellant entered a guilty plea to burglary, a felony of the second degree, in the home burglary case. That charge had been the subject of the discretionary bindover that the juvenile court had ordered in the absence of an amenability hearing or a waiver of the right to an amenability hearing. After receiving a

---

[1] The indictment alleged that the April 9, 2013 aggravated robbery involved two victims.

presentence investigation, the trial court ordered appellant to serve two years in adult prison and an additional three-year period of post-release control. (Mar. 25, 2013 Judgment Entry.)

{¶ 12} On March 6, 2013, the trial court also entered a judgment accepting the state's nolle prosequi of case No. 12CR-3505, the aggravated robbery case (the mandatory bindover offense). The entry represented that the state had sought the nolle because it had been unable to obtain the cooperation of the victims or their parents, who had indicated that they had "moved on" and did not have time to come to court. The court noted in the entry dismissing the aggravated robbery case that appellant had previously pled guilty to burglary, a second-degree felony, in the separate burglary case, case No. 12CR-3506.

{¶ 13} Appellant appeals the juvenile court's judgment, assigning two errors for this court's review:

> [1.] The Franklin County Court of Common Pleas committed plain error when it convicted and sentenced Ta'Sean Brown for burglary, because it did not have subject matter jurisdiction of his burglary case. [Citations omitted.]
>
> [2.] Ta'Sean Brown was denied the effective assistance of counsel because counsel failed to object to the trial court's lack of subject matter jurisdiction. [Citations omitted.]

## II. Analysis

{¶ 14} The juvenile court has exclusive original jurisdiction to hear complaints alleging that a juvenile is a delinquent child by reason of having committed an offense that would be a crime if committed by an adult. *State v. Lucas*, 10th Dist. No. 10AP-923, 2011-Ohio-3450, ¶ 19, citing *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, ¶ 11, and R.C. 2151.23(A). However, R.C. 2152.10(A) provides that, under certain circumstances, a juvenile court must transfer the case to adult court for criminal prosecution "as provided in section 2152.12 of the Revised Code." *See also* R.C. 2152.02(R) (defining mandatory transfer as "a case [that] is required to be transferred for criminal prosecution under division (A) of section 2152.12 of the Revised Code"). Moreover, R.C. 2152.10(B) provides that, "[u]nless the child is subject to mandatory transfer, if a child is fourteen years of age or older at the time of the act charged and if the child is charged with an act that would be

a felony if committed by an adult, the child is eligible for discretionary transfer to the appropriate court for criminal prosecution." *See also* R.C. 2152.02(I) (defining discretionary transfer as meaning "that the juvenile court has discretion to transfer a case for criminal prosecution under division (B) of section 2152.12 of the Revised Code"). That is, the juvenile court must follow the procedures set forth in R.C. 2152.12 in determining whether to order a discretionary transfer of a child for criminal prosecution. R.C. 2152.10(B). Accordingly, R.C. 2152.12 establishes procedures for both mandatory and discretionary transfers of juvenile cases that allege conduct that would be criminal if engaged in by an adult.

{¶ 15} Division (A) of R.C. 2152.12 establishes the procedure a juvenile court must follow where bindover is mandatory, including the circumstances present in case No. 12JU-5040, i.e., where a juvenile has been accused of conduct that would constitute aggravated robbery if committed by an adult.

{¶ 16} Division (B) of R.C. 2152.12 governs discretionary bindover and vests a juvenile court with the discretion to bind over a juvenile in compliance with procedures set forth in the statute. R.C. 2152.12(B) provides that a juvenile court may transfer a case if a court makes certain findings, including a finding that the child is not amenable to rehabilitation in the juvenile system. In making the determination whether to bind over a juvenile, the court is required to consider whether the factors indicating that the case should be transferred outweigh the factors indicating that the case should not be transferred. R.C. 2152.12(B)(3).

{¶ 17} R.C. 2152.12(C) provides that, before considering a discretionary transfer, "the juvenile court shall order an investigation * * * including a mental examination of the child by a public or private agency or a person qualified to make the examination." Divisions (D) and (E) set forth factors relative to a juvenile's amenability to rehabilitation within the juvenile system. An amenability hearing is a "critical stage of the juvenile proceedings * * * affect[ing] whether the juvenile faces a delinquency adjudication, or adult criminal sanctions and the label 'felon.' " *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, ¶ 12.

{¶ 18} Subsection (F) of R.C. 2152.12 establishes the procedure a juvenile court must follow where a juvenile has been charged with multiple offenses and one, but not all, of the alleged charges is a mandatory bindover offense:

> If one or more complaints are filed alleging that a child is a delinquent child for committing two or more acts that would be offenses if committed by an adult, if a motion is made alleging that division (A) of this section applies and requires that the case or cases involving one or more of the acts charged be transferred for, and if a motion also is made requesting that the case or cases involving one or more of the acts charged be transferred pursuant to division (B) of this section, the juvenile court, in deciding the motions, shall proceed in the following manner:
>
> (1) Initially, the court shall decide the motion alleging that division (A) of this section applies and requires that the case or cases involving one or more of the acts charged be transferred.
>
> (2) If the court determines that division (A) of this section applies and requires that the case or cases involving one or more of the acts charged be transferred, the court shall transfer the case or cases in accordance with that division. After the transfer pursuant to division (A) of this section, the court shall decide, in accordance with division (B) of this section, whether to grant the motion requesting that the case or cases involving one or more of the acts charged be transferred pursuant to that division. Notwithstanding division (B) of this section, prior to transferring a case pursuant to division (A) of this section, the court is not required to consider any factor specified in division (D) or (E) of this section or to conduct an investigation under division (C) of this section.
>
> (3) If the court determines that division (A) of this section does not require that the case or cases involving one or more of the acts charged be transferred, the court shall decide in accordance with division (B) of this section whether to grant the motion requesting that the case or cases involving one or more of the acts charged be transferred pursuant to that division.

(4) No report on an investigation conducted pursuant to division (C) of this section shall include details of the alleged offense as reported by the child.

{¶ 19} The parties are in agreement that R.C. 2152.12(F)(2) establishes the procedure the trial court was required to follow in this case. The parties disagree, however, as to the correct interpretation of the last sentence of R.C. 2152.12(F)(2), which provides: "Notwithstanding division (B) of this section, prior to transferring a case pursuant to division (A) of this section, the court is not required to consider any factor specified in division (D) or (E) of this section or to conduct an investigation under division (C) of this section."

{¶ 20} Appellant argues that, once the court finds the existence of probable cause as to an alleged mandatory bindover offense and transfers that charge to adult court, the clear language of R.C. 2151.12(F)(2) and (3) requires that the juvenile court "decide, *in accordance with division (B) of this section*, whether to grant the motion requesting that the case or cases involving one or more of the acts charged be transferred pursuant to that division." (Emphasis added.) Division (B) of R.C. 2151.12 requires a background investigation and an amenability hearing. Accordingly, under appellant's reasoning, a juvenile court must conduct a division (B) amenability hearing and background check concerning the discretionary bindover charges even though it has already ordered transfer of a separate mandatory bindover offense.

{¶ 21} The state, on the other hand, emphasizes the last sentence of (F)(2), which provides that "[n]otwithstanding division (B) of [R.C. 2152.12], prior to transferring a case *pursuant to division (A)* of this section [the mandatory bindover division] the court is not required to consider any factor specified in division (D) or (E) of this section [specifying factors to be considered in an amenability hearing] or to conduct an investigation under division (C) of this section." (Emphasis added.) The state acknowledges that, despite the fact that "the language in the last sentence of (F)(2) is clear" (Appellee's Brief, 11), the language "is senseless in the context of the statute as a whole." (Appellee's Brief, 11.) It urges us to recognize that "an error exists" in division (F)(2) and to judicially correct the error by replacing the words "division (A)" in the last sentence of R.C. 2152.12(F)(2) with the words "division (F)(2)." (Appellee's Brief, 11.) In support, the state argues that the

statutes establish that, where bindover is mandatory, "[t]here is no situation in which a juvenile court would weigh factors for and against transfer or conduct an investigation." (Appellee's Brief, 12.)   It suggests that the last sentence of (F)(2) is therefore senseless.

{¶ 22} We disagree.  Arguably, the last sentence of (F)(2) is superfluous because it adds nothing to the procedure imposed elsewhere in R.C. 2152.10 through 12—that is, other statutory divisions establish that a juvenile court need not hold an amenability hearing where the charged offense is a mandatory bindover offense and probable cause exists that the juvenile committed  that mandatory bindover offense.  But the fact that the last sentence of (F)(2) arguably was unnecessary does not mean that the last sentence is senseless or that the General Assembly intended to enact something other than what is reflected in the clear language it chose. To the contrary, inclusion of the last sentence of (F)(2), if anything, reinforces the conclusion logically drawn from the statutory bindover scheme as a whole.  That conclusion is that, in the case of a mandatory bindover offense, a juvenile court need not conduct an amenability hearing or background investigation when it finds the existence of probable cause. But the fact that the General Assembly, in effect, said the same thing twice does not render the second iteration senseless or meaningless, nor does it justify an inference that the legislature meant something else and simply made a drafting mistake.

{¶ 23} In further support of its position, the state observes that the current language of R.C. 2152.12(F)(2) became law on January 1, 2002, as a result of the enactment in 2001 of Am.Sub.S.B. 179 ("S.B. 179").  The state contends that, prior to 2002, the juvenile statutes did not require a trial court to conduct an amenability hearing in connection with a discretionary bindover offense if the court had previously ordered a mandatory bindover.  See *Goins v. Wellington,* 7th Dist. No. 01 CA 208, 2001-Ohio-3503 (interpreting former R.C. 2151.26(C)(4)). The state further notes that the Final Analysis of S.B. 179 prepared by the Legislative Services Commission ("LSC"), did not expressly reference a change of the prior procedure relative to the situation where a juvenile is charged with both mandatory and discretionary bindover offenses.  It argues that the absence of a specific reference in the LSC analysis to this particular procedural change, which it characterizes as "substantial," justifies the inference that the General Assembly

did not intend to change the prior law. Accordingly, it urges this court to "substitute 'division (F)(2)' for 'division (A)' in the last sentence of R.C. 2152.12(F)(2)."

{¶ 24} We note initially that we are not bound by bill analyses prepared by the LSC, although we may refer to them when we find them helpful and objective. *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191 (1980). Regardless, the LSC analysis does state, after first describing the pre-2002 procedure, that S.B. 179 "*replaces* the prior * * * bindover provisions described above with the following transfer provisions in new R.C. 2152.12." (Emphasis added and original emphasis deleted.) Ohio Legislative Service Commission Final Bill Analysis of 2000 Am. Sub.S.B. No. 179, at 34, found at http://lsc.state.oh.us/analyses/fnla123.nsf/All%20Bills%20and%20Resolutions/8851B9 052AEF8166852569CB005E02BD (accessed Dec. 24 , 2013). Moreover, in describing the last sentence of R.C. 2152.12(F)(2), the LSC analysis states:

> Notwithstanding the discretionary transfer provisions, prior to transferring a case pursuant to the *mandatory transfer provisions,* the court is not required to consider any factor described above in "Factors favoring transfer" or "Factors against transfer" or to conduct an investigation as described above in "Investigation."

(Italicized emphasis added, original emphasis deleted.) LSC Final Bill Analysis, S.B. 179, at 38.

{¶ 25} That is, the LSC, in describing the change in procedure implemented by S.B. 179, clearly understood that use of "division (A)" in the last sentence of (F)(2) meant that a juvenile court, when binding over a *mandatory transfer*, need not consider factors that would otherwise be considered in a *discretionary transfer* case. The LSC did not suggest that the General Assembly meant that a juvenile court would be relieved of its obligation to conduct an amenability hearing as to an alleged *discretionary transfer* charge allegedly committed by a juvenile based on the finding of probable cause that the same juvenile committed a *mandatory transfer* offense.

{¶ 26} In short, the LSC analysis does not support the state's premise that the General Assembly simply made a drafting error when formulating the last sentence of (F)(2). To the contrary, in reviewing the text of S.B. 179, the LSC interpreted the last

sentence of (F)(2) in accord with the actual language included in the bill. We do so as well.

{¶ 27} Moreover, it is axiomatic that this court may not itself rewrite a statute to change the clear meaning of statutory text. "If the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. * * * Unambiguous statutes are to be applied according to the plain meaning of the words used. * * * Courts are not free to delete or insert other words." *State ex rel. Kleja v. State Teachers Retirement Bd.,* 10th Dist. No. 08AP-326, 2009-Ohio-2047, ¶ 69, citing *State ex rel. Burrows v. Indus. Comm.,* 78 Ohio St.3d 78, 81 (1997).

{¶ 28} Moreover, the Supreme Court of Ohio has recognized that the General Assembly, in the wake of judicial interpretation of the prior bindover statute, thereafter amended the statute to "prohibit[] juvenile courts from holding that once a juvenile has been bound over to adult court, the juvenile will be bound over in all future felonies." *State v. D.W.,* 133 Ohio St.3d 434, 2012-Ohio-4544, ¶ 46.

{¶ 29} We therefore conclude that the juvenile court failed to comply with R.C. 2152.12 in transferring the discretionary bindover offense of burglary to the adult court without having first conducted an amenability hearing or obtaining a valid waiver of the right to an amenability hearing. Where a juvenile court has purported to transfer a juvenile case to adult court without having complied with mandatory bindover procedure, the adult court proceeds in the absence of subject-matter jurisdiction and any judgment entered by the adult court is a nullity and void ab initio. *State v. Wilson,* 73 Ohio St.3d 40, 44 (1995); *State v. King,* 6th Dist. No. L-12-1013, 2013-Ohio-1265, ¶ 10; *State v. Hanning,* 10th Dist. No. 98AP-380 (Feb. 9, 1999).

{¶ 30} Because the juvenile court committed statutory error, we need not reach appellant's argument that appellant's constitutional rights have been violated because the trial court bound him over to be tried as an adult on the burglary charge without first conducting an amenability hearing. *See State v. Perry,* 10th Dist. No. 06AP-333, 2006-Ohio-6735, ¶ 6, citing *In re Boggs,* 50 Ohio St.3d 217, 221 (1990) ("Because we find that the case can be decided solely on statutory grounds, we do not reach the constitutional arguments."). Similarly, because the judgment of conviction is null and void, we need not examine the question as to whether the failure of appellant's counsel to object to the adult

court's lack of subject-matter jurisdiction constituted plain error. See *State v. Hayes*, 7th Dist. No. 07-MA-134, 2008-Ohio-4813, ¶ 29 (suggesting that plain-error analysis is unnecessary where the trial court lacked subject-matter jurisdiction as that deficiency may be raised at any time during the proceedings).

{¶ 31} Accordingly, we sustain appellant's first assignment of error.

{¶ 32} In his second assignment of error, appellant asserts that he received ineffective assistance of counsel during the bindover proceedings in violation of his constitutional right to counsel. Again, we need not discuss the merits of this argument because we need not address constitutional issues where the case may be resolved on the basis of statutory interpretation alone. *Id.*

{¶ 33} Accordingly, we overrule appellant's second assignment of error.

## III. Conclusion

{¶ 34} For the foregoing reasons, appellant's first assignment of error is sustained and his second assignment of error is overruled. We find that the judgment of the Franklin County Court of Common Pleas convicting appellant of burglary was void because it was made in the absence of subject-matter jurisdiction. We therefore find the judgment to be a nullity and remand the case to that court with instructions that it transfer the case to its juvenile branch for an amenability hearing or proper waiver of an amenability hearing, consistent with the procedure established by the Supreme Court of Ohio in *In re D.W.*

*Judgment reversed and cause remanded with instructions.*

SADLER, P.J., and McCORMAC, J., concur.

McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____