[Cite as *Angus v. Angus*, 2016-Ohio-7789.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sarah Angus, | : | |
| Plaintiff-Appellee, | : | Nos. 15AP-655 |
| | | 15AP-693 |
| v. | : | (C.P.C. No. 11DR-4018) |
| Larry Angus, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 17, 2016

**On brief:** *Larry Angus*, pro se.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations.

PER CURIAM.

{¶ 1} Defendant-appellant, Larry Angus, Jr., appeals judgments issued by the Franklin County Court of Common Pleas, Division of Domestic Relations, on June 11, 2015 and July 13, 2015. For the following reasons, we affirm those judgments.

{¶ 2} Angus and plaintiff-appellee, Sarah Ice, married on June 20, 2007.[1] At the time of the marriage, Ice was the mother of two children, E.A. and J.A. Angus executed affidavits acknowledging paternity of both children. After the parties' marriage, Ice gave birth to L.A. and A.A.

---

[1] When plaintiff filed for divorce, she was known as "Sarah Angus." In the divorce decree, the trial court restored plaintiff to her former name of "Sarah Ice." According to Angus, plaintiff has remarried, and she is now known as "Sarah Taylor." We will refer to plaintiff as "Ice."

{¶ 3} Ice filed for divorce on October 17, 2011. During the divorce proceedings, Ice requested that she, Angus, E.A., and J.A. undergo genetic testing to determine the paternity of E.A. and J.A. That testing revealed that Angus was the biological father of J.A., but it excluded Angus as the biological father of E.A. After receiving these results, Ice amended her complaint to request that the trial court (1) disestablish paternity between E.A. and Angus and (2) establish paternity between E.A. and third-party defendant Keith Taylor.

{¶ 4} On September 30, 2013, the trial court granted a divorce to Angus and Ice. In the divorce decree, the trial court disestablished the father-child relationship between E.A. and Angus. The trial court then established a father-child relationship between E.A. and Taylor, who had acknowledged his paternity of E.A. in open court and waived his right to genetic testing. The trial court named Ice the legal custodian and residential parent of J.A., L.A., and A.A., and it granted Angus supervised parenting time with his children.

{¶ 5} Both before and after the issuance of the divorce decree, Angus has bombarded the trial court with dozens of repetitive, virtually incomprehensible motions. The trial court has almost universally denied these motions. To the extent that the trial court's rulings have come before us on appeal, we have affirmed them. *Angus v. Angus*, 10th Dist. No. 14AP-22 and 14AP-159, 2014-Ohio-4225 ("*Angus I*"); *Angus v. Angus*, 10th Dist. No. 14AP-742, 2015-Ohio-2538.

{¶ 6} Angus filed this consolidated appeal following the issuance of a new round of judgments in which the trial court denied another batch of Angus' motions. In the notice of appeal filed in case number 15AP-655, Angus appeals a judgment entered June 11, 2015. The trial court issued six different judgments on June 11, 2015. Angus failed to specify in his notice of appeal which of these six judgments he is appealing. However, Angus' assignments of error challenge only one of the judgments: the judgment overruling Angus' objections to the magistrate's denial of his motions to recuse the magistrate and for genetic testing of Taylor. We, therefore, will presume that Angus refers to that judgment in the notice of appeal.

{¶ 7} According to the notice of appeal filed in case number 15AP-693, Angus appeals a judgment entered July 31, 2014. No such judgment exists. However, on July 13,

2015, the trial court denied Angus' request that the trial court provide him a transcript of a July 31, 2014 hearing at public expense.  We, therefore, will presume that Angus mistakenly identified the date of the appealed judgment, and that he actually intends to appeal the July 13, 2015 judgment.

{¶ 8}  Angus assigns the following errors:[2]

[1.] Larry Ask For Transcripts,Was Denied,Can A Court Remove Rule 13 And Rule 8 For Required Answers To Deny Transcripts?,*Abuse of Authority*

[2.] Magistrate Seems Not To Act As A Magistrate, But As Lawyer/ In Her Person To Attack Two Valid Motions,Making These Two Motions The Basis For Her Decision Inappropriately ,*Improper Review Of The Facts*

[3.] Issues With Magistrate Enforcing Fundamental Rights,*Failure To Self Recuse*,Larry Shows How His *Fundamental Rights To Parent All Children* At All Times Was Ignored *Depriving Larry Statutory Right To Parent* And *Constitutional Rights To Parent*,Supporting Evidence Shows This Going On From Day One Of Temporary Orders
Magistrate Seems *Not To Act As A Magistrate*,*Giving 3rd Person Legal Advice As Lawyer / In Her Person To The Plaintiff Only.*
*Interoperate Removal Of "Rule 13" And "Rule 8".*
Everyone Ignores Larry's Fundamental Right To Parent [E.A.] Before Disestablishment And All Kids....

[4.] Dna Testing Was Not Properly Preformed And *Had No Statutory Authority To Not Include Keith For DNA Testing*,Also The Magistrate Dismissed Dna Testing Request By Larry *Depriving Larry Equal Protection Of The Law.*

[5.] *Every One Says Larry Is Incoherent,Undecipherable Yet NO one Will Apply The "Eldridge factors" Or Counsel*

[6.] What is Real With Case Law For 11dr4018?

(Emphasis sic.)

{¶ 9}  Preliminary, we must define the scope of our review.  In arguing each assignment of error, Angus includes contentions unrelated to the assignments of error

---

[2] We quote Angus' assignments of error verbatim, without correcting any errors in grammar or punctuation.

under which they appear.  Courts of appeal must determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16."  App.R. 12(A)(1)(b).  Thus, generally, appellate courts rule on assignments of error only, and do not address mere arguments.  *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9.  Applying App.R. 12(A)(1)(b) here, we will only review Angus' assignments of error, and we will disregard any arguments not related to the assignment of error under review.

{¶ 10} By Angus' first assignment of error, he argues that the trial court erred in refusing to grant him a transcript at public expense.[3]  For the most part, the argument Angus offers to support this assignment of error focuses on a ruling in a different case; specifically, a juvenile case in which Angus is involved.  Apparently, Angus also sought a transcript at public expense in the juvenile case.  Angus argues that the trial judge who denied that motion lacked the authority to rule on the motion.

{¶ 11} The juvenile court's ruling is not now before us, so we cannot review it.  We are only concerned with whether the trial court erred in the judgment now on appeal, i.e., the July 13, 2015 denial of a transcript at public expense.  A ruling on a different motion in a different case has no bearing on whether the trial court erred in the July 13, 2015 judgment.

{¶ 12} Regarding the judgment before us, Angus sets forth only one potentially pertinent argument:  the trial court stopped granting him transcripts at public expense to prevent him from pointing out "[m]ajor errors."  (Appellant's Final Am. Brief at 10.)  We find no merit to this contention.  The trial court had good reason to deny Angus' motion for a transcript at public expense:  Angus requested the transcript too late for it to serve any purpose.

{¶ 13} In the motion under review, Angus sought a transcript of the July 31, 2014 hearing before the magistrate.  During the July 31, 2014 hearing, the magistrate heard argument regarding Angus' motions for the magistrate to recuse herself and for an order requiring Taylor to submit to genetic testing.  The magistrate issued a decision denying those motions on August 11, 2014, and Angus then filed objections to the magistrate's decision.  On June 11, 2015, the trial court entered a judgment denying Angus' objections.

---

[3] Although we have worked diligently to understand Angus, we do not know what he means when he asks, "Can A Court Remove Rule 13 And Rule 8 For Required Answers To Deny Transcripts?"  Therefore, we cannot address that part of Angus' first assignment of error.

Angus did not request a transcript of the July 31, 2014 hearing until July 13, 2015—over a month after the trial court entered judgment on Angus' objections.

{¶ 14} Appellate review is limited to the record as it existed at the time that the trial court rendered its judgment.  *Walker v. Wright*, 10th Dist. No. 13AP-1003, 2015-Ohio-248, ¶ 42.  The transcript of the July 31, 2014 hearing was not in the record when the trial court ruled on Angus' objections.  Thus, even if the trial court had granted Angus' motion for a transcript, we could not consider that transcript in an appeal of the trial court's denial of the objections.  *See Law Offices of James P. Connors v. Cohn*, 10th Dist. No. 08AP-1031, 2009-Ohio-3228, ¶ 23-25 (refusing to consider a transcript of proceedings before a magistrate because the transcript was not part of the record when the trial court issued its ruling on the appellant's objections to the magistrate's decision).  Because Angus only requested a transcript after it had lost all utility, the trial court did not err in denying Angus' motion.  Accordingly, we overrule the first assignment of error.

{¶ 15} By his second and third assignments of error, Angus argues that the trial court erred in overruling his objections to the magistrate's refusal to recuse herself.[4]  We disagree.

{¶ 16} Before considering the merits of Angus' arguments, we must address the procedural missteps that occurred below.  Pursuant to Civ.R. 53(D)(6), "[d]isqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court."  Thus, "[t]he proper method to challenge a magistrate's impartiality is to file a motion for disqualification with the trial court." *Barton v. Barton*, 5th Dist. No. 15-CA-13, 2015-Ohio-5194, ¶ 41.  In other words, motions to disqualify a magistrate are not subject to the decision and objection processes set forth in Civ.R. 53(D)(1) and (3).

{¶ 17} Here, the process employed to decide Angus' motions deviated from that contemplated in Civ.R. 53(D)(6).  The magistrate, not the trial court, initially decided Angus' motions for recusal.  Angus then filed objections to the magistrate's decision, and the trial court denied those objections.  The use of this process constituted error.  Civ.R. 53(D)(6) removes the magistrate from the decisional process because "[i]t is axiomatic

---

[4] We do not know what Angus means when he states, "*Interoperate Removal of "Rule 13" And "Rule 8*." Therefore, we cannot address that part of Angus' third assignment of error.

that a magistrate cannot effectively rule upon a motion to recuse himself." *Unger v. Unger*, 12th Dist. No. CA2000-04-009 (Dec. 29, 2000). Consequently, trial courts, magistrates, and parties must all work to ensure that the Civ.R. 53(D)(6) process is followed.

{¶ 18} Although Angus' motions were decided through an incorrect process, we will review the issues raised in those motions. *See Lamont v. Lamont*, 11th Dist. No. 2005-G-2628, 2006-Ohio-6204, ¶ 17 (reviewing the merits of a motion to disqualify a magistrate even though the appellant initially raised the issue of disqualification before the magistrate, not the trial court, because the trial court decided the appellant's objections to the magistrate's denial of the motion); *Unger* (same). The trial court ruled on Angus' motions when it rejected Angus' objections and adopted and approved the magistrate's decision. Thus, while the magistrate erroneously weighed in on the motions, the trial court had the final say regarding the appropriate ruling.[5] We, however, caution future parties not to mistake our willingness to review the error alleged as permission to ignore the process set forth in Civ.R. 53(D)(6).

{¶ 19} Angus presents three arguments in support of his second and third assignments of error. First, Angus contends that the magistrate displayed her bias toward him when she stated in her decision:

> [B]oth before and after the divorce decree, defendant has filed numerous motions which lacked any legal or factual basis to support the motion, for example "motion to clarify evil doings" or "motion for de facto service". Nearly all of the motions filed by defendant consist of what appears to be stream of conscious, repetitive, disconnected ramblings by defendant rehashing evidence and issues litigated to finality in the divorce which are interspersed with random legal phrases and quotes which have little bearing to issues presented by this case. Several of these documents contain profanity and thinly veiled threats and references to doomsday and death.

---

[5] The dissenting opinion disagrees with our decision to consider whether the trial court erred in denying Angus' objections to the magistrate's refusal to recuse herself. The dissenting opinion is premised on an analysis of the unique circumstances preceding and surrounding the trial court's December 11, 2013 judgment. However, this is not an appeal from the December 11, 2013 judgment. Indeed, that judgment was previously appealed and affirmed. *Angus I*, 10th Dist. No. 14AP-22 and 14AP-159, 2014-Ohio-4225. In this appeal (i.e., appeal number 15AP-655), we are tasked with reviewing the June 11, 2015 judgment, which resulted after Angus filed even more motions for the magistrate to recuse herself. The circumstances preceding and surrounding the December 11, 2013 judgment do not affect, much less preclude, this court's review of the June 11, 2015 judgment.

(Aug. 11, 2014 Mag. Decision at 5.)  After reviewing the multitude of motions Angus has filed, we conclude that, as a general matter, the magistrate accurately summarized their content.  The magistrate's statements, therefore, are not evidence of bias, and the trial court did not abuse its discretion in so finding.

{¶ 20}  Angus next recounts oral statements that he alleges the magistrate made, and he argues that those statements are proof of the magistrate's bias against him.  A magistrate is presumed not to harbor bias or prejudice against a party, so the party alleging bias must set forth evidence to overcome the presumption of integrity.  *Melick v. Melick*, 9th Dist. No. 26488, 2013-Ohio-1418, ¶ 9.  We have searched the record in vain for a transcript that contains the alleged statements.  We conclude that, without a transcript establishing that the magistrate actually said what Angus alleges, Angus does not have adequate evidence to overcome the presumption against bias.  The trial court, therefore, did not abuse its discretion in refusing to disqualify the magistrate on the basis of the alleged statements.

{¶ 21}  Third, Angus argues that the magistrate showed her bias by issuing factual findings and legal conclusions which Angus believes are wrong.  We also find this argument unavailing.

{¶ 22}  A magistrate is biased or prejudiced against a party if she harbors "a hostile feeling or spirit of ill will * * * toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the [magistrate], as contradistinguished from an open state of mind which will be governed by the law and the facts."  *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.  Generally, mere disagreement or dissatisfaction with a ruling does not demonstrate bias or prejudice.  *In re Disqualification of Corrigan*, 105 Ohio St.3d 1243, 2004-Ohio-7354, ¶ 9; *accord In re Disqualification of Fuerst*, 134 Ohio St.3d 1267, 2012-Ohio-6344, ¶ 14 (holding that "adverse rulings, even erroneous ones, are not evidence of bias or prejudice").

{¶ 23}  Angus adamantly believes that the magistrate has issued erroneous rulings that have deprived him of his rights to parent his children and to a fair trial.  However, a motion to disqualify does not provide a forum for a party to collaterally attack the merits of a magistrate's factual findings or legal conclusions.  *See In re Ghiz*, 146 Ohio St.3d 1249,

2015-Ohio-5667, ¶ 5 (holding that "an affidavit of disqualification is not the appropriate vehicle to reargue the merits of a judge's legal ruling"); *In re Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, ¶ 4 (holding that an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law").  We are solely concerned with whether the magistrate exhibited bias or prejudice, and Angus' disagreement with the magistrate's rulings fails to prove either.

{¶ 24} As a final matter, we note that this is not the first time this court has reviewed whether the trial court should have disqualified the magistrate.  In *Angus I*, we found no evidence of bias on the part of the magistrate, and we affirmed the judgment of the trial court that refused to disqualify the magistrate.  In the motions under review in this case, Angus repeated some of the same arguments he made in support of the motions under review in *Angus I*.  To the extent the arguments in the two sets of motions overlap, our earlier ruling remains the law of the case.  *See Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984) (under the doctrine of law of the case, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels").  For this reason, in addition to the reasons set forth above, we overrule Angus' second and third assignments of error.

{¶ 25} By Angus' fourth assignment of error, he argues that the trial court erred in refusing to order Taylor to undergo genetic testing to establish that he is the biological father of E.A.  As this court has previously held, "Angus has standing to contest the termination of his relationship with [E.A.], but no standing to contest the issue of who is the male parent once his parentage has been disproved."  *Angus I*, 10th Dist. No. 14AP-22 and 14AP-159, 2014-Ohio-4225, at ¶ 6.  Angus, therefore, has no standing to seek genetic testing for the purpose of proving the identity of E.A.'s biological father.  Accordingly, we overrule Angus' fourth assignment of error.

{¶ 26} By Angus' fifth assignment of error, he argues that the trial court erred by denying him court-appointed counsel.  Angus does not explain, and we do not see, how this alleged error relates to the judgments before us in this appeal.  Moreover, we reviewed and rejected this argument in *Angus I*, and our ruling is now the law of the case.  Accordingly, we overrule Angus' fifth assignment of error.

{¶ 27} Angus' sixth assignment of error does not actually assign any error; it instead merely asks, "What Is Real With Case Law For 11dr4018?"  In arguing the sixth assignment of error, Angus alleges a myriad of factual and legal errors in the divorce decree.  Because that judgment is not before us in this appeal, we cannot review that judgment for error.  Accordingly, we overrule Angus' sixth assignment of error.

{¶ 28} For the foregoing reasons, we overrule Angus' six assignments of error, and we affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgments affirmed.*

KLATT, J., and DORRIAN, P.J., concur.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 1}   I concur with the decision of the majority on all assignments of error except for portions of the second and third assignments of error as they relate to Larry Angus' ("Larry") motion for the magistrate to disqualify or recuse herself.  While Larry made multiple requests and motions for the magistrate's recusal throughout the record before us, the trial court's ruling on the subject made prior to the particular judgment entry Larry appealed affects the balance of the proceedings and warrants additional review.  It is for this reason that I respectfully dissent from the decision of the majority on this subject.

{¶ 2}   The majority states in paragraph 16 of the decision that procedural missteps occurred when the magistrate in contravention of Civ.R. 53(D)(6) heard Larry's motion that she disqualify herself.  In paragraph 17, the majority states, "[t]he magistrate, not the trial court, initially decided Angus' motions for recusal."  In paragraph 18, the majority further states, "[t]hus, while the magistrate erroneously weighed in on the motions, the trial court had the final say regarding the appropriate ruling."

{¶ 3}   The magistrate heard Larry's requests that she disqualify herself as early as August 2, 2013 and September 6, 2013.  While the trial court did hold a subsequent hearing on Larry's disqualification motion, on October 30, 2013, it took additional evidence and made it clear that it would be taking the matter under advisement once it had before it both transcripts to review.  The trial court had already noted at this hearing that it had granted permission for Larry to obtain the transcript of the August 2, 2013

hearing by order of September 6, 2013 and to obtain the September 6, 2013 transcript by order of September 23, 2013. The trial court also noted that Larry had not physically made a request of the court reporter to transcribe the proceedings of the August 2, 2013 and September 6, 2013 hearings before the magistrate and that this violated local rule. But the trial court stated:

> [Court]: All right. However, what I'm going to do is, I'm going to let you * * * argue your objection today if you want to. And then you may submit these to the Stenographers as a request for them to be ordered and I will wait for them to arrive before I rule on the objection, so I can see the transcript. I'm gonna (sic) give you a little leeway.

(Oct. 30, 2013 Tr. at 4-5.) Only a transcript of the September 6, 2013 hearing but not the August 2, 2013 hearing before the magistrate was considered by the trial court in support of Larry's timely filed objections (filed September 23, 2013, 13 days after the trial court adopted the magistrate's decision, both of which decisions were filed on September 10, 2013, prior to the deadline for the filing of objections).

{¶ 4} The record is somewhat unclear, because it shows (1) at the trial court's October 30, 2013 hearing on Larry's objections, the court found that it needed transcripts of both the August 2, 2013 and September 6, 2013 hearings to consider Larry's objections to the magistrate's decision on his motion to disqualify her, (2) after the October 30, 2013 hearing the trial court entered an order that the transcript of just the September 6, 2013 hearing be filed with the trial court within five days,[6] and (3) on October 30, 2013, the same date as the trial court's hearing on Larry's objections, the trial court entered several additional orders. Two of them concerned the August 2, 2013 and the September 6, 2013 transcripts.

> [Defendant's Motions for Transcript at Expense of Public] filed September 20, 2013 and October 25, 2013 was previously granted as to request for September 6, 2013 but is DENIED

---

[6] The transcript of the September 6, 2013 hearing was filed on November 19, 2013, 20 days after the trial court's order, and the trial court referenced it in its decision and entry on December 11, 2013, specifically noting that the transcript of the September 6, 2013 hearing had been filed in the record. But no mention is made in the decision of a transcript of the August 2, 2013 hearing, and it does not appear in the record until almost a month after the trial court's decision, filed on January 8, 2014.

> without prejudice absent a properly filed appeal. [Emphasis sic.]
>
> * * *
>
> [Defendant's Objection to Decision of Magistrate] filed September 23, 2013 is UNDER ADVISEMENT [Emphasis sic.] pending proper request and filing of transcripts *from August 2, 2013 and September 6, 2013.* [Emphasis added.]

(Oct. 30, 2013 Jgmt. Entry at 1.) Finally, only the September 6, 2013 transcript had been requested by Larry per motions filed September 20, 2013 and October 25, 2013.

{¶ 5} The majority appears to find that the trial court's decision of December 11, 2013, adopting the magistrate's decision of September 10, 2013 in essence cured the error in the magistrate considering her own disqualification. I would hold that it does not, especially since no August 2, 2013 transcript was filed until after the trial court decided the matter of the magistrate's recusal.

{¶ 6} While the record is less than clear as to whether Larry, appearing pro se, actually requested the August 2, 2013 transcript (see, Sept. 20, 2013 Mot. for Tr.), it is immaterial whether Larry formally requested that particular transcript. He should not have had to file objections or a transcript to support his motion in the first place. Pursuant to Civ.R. 53(D)(6), the magistrate had no authority to decide her own qualification to hear Larry's case. Rather, Larry's motion should have been considered by the trial court outside of the Civ.R. 53 order of reference. Civ.R. 53 does not require or even contemplate a prior magistrate hearing, objections or a transcript, in order for a trial court judge to hear a motion to disqualify a magistrate. Civ.R. 53(D)(6) ("Disqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court.").

{¶ 7} Under these circumstances, the magistrate's hearing of her own recusal could not be and was not cured by the trial court's objection hearing or by its ultimate decision on Larry's objections, because the procedure used was not in full accord with Civ.R. 53. Since the trial court took the balance of testimony at the objection hearing under advisement and specifically referenced the two transcripts as necessary to its decision, Civ.R. 53 was not fairly and fully implemented so as to otherwise (even if it could) cure the omission of not following Civ.R. 53(D)(6).

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ. R. 53(D)(3)(a)(ii), shall be supported by a transcript of *all the evidence submitted to the* magistrate *relevant to that finding* or an affidavit of that evidence if a transcript is not available.

(Emphasis added.) Civ.R. 53(D)(3)(b)(iii). The trial court could not consider objections to the magistrate's findings of fact on why Larry "felt the magistrate in the matter should have been recused due to her demeanor and actions in the matter" without either fully hearing his objections on October 30, 2013 or without having both the August 2, 2013 and September 6, 2013 transcripts. (Dec. 13, 2013 Decision at 3.)

{¶ 8} Under circumstances properly before a magistrate, when all relevant evidence to findings of fact are not filed in support of objections, a trial court is limited to an examination of a magistrate's conclusions of law and recommendations. *Ohio Environmental Protection Agency v. Lowry*, 10th Dist. No. 10AP-1184, 2011-Ohio-6820, ¶ 12, quoting *Wade v. Wade*, 113 Ohio App.3d 414, 418 (11th Dist.1996). Here, the trial court did not have all of the transcripts it specifically found to be relevant to deciding Larry's objections under advisement. Without " 'all the evidence submitted to the magistrate relevant to' " the magistrate's factual findings, unless a trial court elects to hold further hearings, it must consider the magistrate's conclusions in light of the magistrate's accompanying findings of fact. *Id.* at ¶ 13, quoting Civ.R. 53(D)(3)(b)(iii).

{¶ 9} While the trial court did hold its own hearing on October 30, 2013, testimony was limited. Without the August 2, 2013 transcript, the trial court could not make an independent review. Civ.R. 53(D)(4)(d). Without an independent review, it cannot be said that the trial court's ultimate decision was properly reached or that the trial court "cured" the error of the magistrate hearing Larry's motion on her own disqualification. When Civ.R. 53 is ordered by a trial court to be implemented in a proceeding, it must be fully followed.

{¶ 10} I am aware and disapprove of the fact that Larry spoke abusively to the magistrate at the September 6, 2013 hearing when he stated, "[n]ow, are you being a smart ass, or are you acting as a Magistrate?" at which point the transcript shows he was verbally subdued by a law enforcement officer. (Sept. 6, 2013 Tr. at 7.) This, however, does not relieve the trial court or the magistrate from the requirement of Civ.R. 53(D)(6).

At the hearing on his objections before the trial court on October 30, 2013, Larry explained his behavior as follows:

> [Larry]: [I]n this Court I've met what I guess you would say -- I wasn't getting the fair end of the stick, I'll just say it. September 6th, when I went to court, got into an argument with the Magistrate, which she had a cop there, I think that the cop was there to keep the peace. I said the word, "pissed away all the time," well that's exactly what I said, the cop got mad, you know, when -- while me and the Magistrate was arguing. The cop got mad at me, grabbed his Taser, and starts walking up on me with a blood shot face and he directly interfered with my testimony. * * * Cause (sic), I -- now, I'm like, well shit now I can get in trouble for, you know, if -- if I say the wrong thing now regardless of what it's about, now I'm going to jail, how does this work? So I got greatly limited on that day, too.

(Oct. 30, 2013 Tr. at 6-7.)

{¶ 11} Larry testified further on October 30, 2013 before the trial judge:

> [Larry]: Avoid abuse of procedure of * * * Judicial Officials. He was there to be a peace keeper not inform me of what I'm allowed to say and not allowed to say.
>
> * * *
>
> You know, like I said, I thought that -- that the Magistrate would step in. * * * But then she starts verbally attacking me. [B]ut I had to break down and ask her, "Are you being a Magistrate right now or something else?" You know, I got -- I mean, cause (sic), I'm like, I'm in shock that this is actually going on. You know, I'm -- I'm being treated this way. I was completely stunned that it was all happening that way.

(Oct. 30, 2013 Tr. at 8-9.) At this point, the trial judge stated, "[s]o I'm -- I'm giving it permission to supplement with the transcript. So I'll see it in the transcript." Larry replied, "[b]ut, yeah, so, you know, like I said, I was just completely disgusted with the way the day went, more hurt than anything. Because, I mean, I figured that somebody would stop all this sooner or later. But, it wasn't." (Oct. 30, 2013 Tr. at 11.) The trial court continued, "[s]o, you feel that in any future proceedings you will not be able to get a fair shake in front of this -- this Magistrate?" Larry replied, "I -- I do not, no. There's no way." *Id.* Finally, after some brief additional testimony from Larry, the trial court stated:

> [Court]:  All right.  I'm going to, assuming you go down and order those transcripts when they come up, I will review them in light of your objections and review her decisions in that and make a decision on that matter.

(Oct. 30, 2013 Tr. at 13.)   Thereafter, the trial court moved on to other issues at the October 30, 2013 hearing.

{¶ 12}  The testimony Larry gave at the October 30, 2013 hearing concerning the magistrate's potential recusal was focused almost entirely on the existence and actions of a law enforcement officer at the September 6, 2013 hearing and the magistrate's acquiescence to the nature of the law enforcement officer's participation in the proceeding.  The October 30, 2013 hearing before the trial court judge consisted of the trial court taking additional evidence under Civ.R. 53(D)(4)(d) and indicating it would review the transcripts of the magistrate's hearing of Larry's motion to disqualify the magistrate, indicating it would reach a decision "under advisement."  (Emphasis omitted.) (Oct. 30, 2013 Jgmt. Entry at 1.)  Because the trial court did not review the August 2, 2013 transcript before it ruled on Larry's objections, I cannot find that its review was "independent" or that the failure to follow Civ.R. 53(D)(6) was cured by the trial court agreeing with the magistrate on the ultimate decision.

{¶ 13}  The majority references this dissenting opinion in its fifth footnote, noting that we decided Larry's appeal of the trial court's December 11, 2013 order that included overruling Larry's objections on recusal in *Angus I,* 10th Dist. No. 14AP-22 and 14AP-159, 2014-Ohio-4225.  In that decision in paragraph 11 we stated that we "found no evidence of bias, prejudice or delinquency on the part of the magistrate and judge in the Franklin County Court of Common Pleas, Division of Domestic Relations."  We did not have jurisdiction to make that finding with regard to the judge, and I would clarify and limit that portion of the decision to being an evidentiary review to determine whether or not the trial court abused its discretion and would find it had not.

{¶ 14}  We have previously recognized that:

> The Ohio Constitution vests the sole authority for determining the disqualification of a judge of a court of common pleas in the chief justice of the Supreme Court of Ohio. Section 5(C), Article IV, Ohio Constitution; *State v. Hughbanks*, 1st Dist. No. C-010372, 2003 Ohio 187, at ¶ 7-8, citing *Beer v. Griffith*

(1978), 54 Ohio St.2d 440, 8 O.O.3d 438, 377 N.E.2d 775. Thus, if a party believes that a judge of a court of common pleas should be disqualified from considering a matter, the party must file an affidavit of disqualification with the clerk of the Supreme Court of Ohio pursuant to R.C. 2701.03. Consequently, a court of appeals is without authority to consider an error regarding the recusal or disqualification of a judge of the court of common pleas. *State v. Ramos* (1993), 88 Ohio App.3d 394, 398, 623 N.E.2d 1336, citing *Beer, supra,* at 441-442; *Hughbanks, supra*, at ¶ 8.

*State v. Melhado*, 10th Dist. No. 05AP-272, 2006-Ohio-641, ¶ 11.[7] Thus, I would limit our review of the disqualification issues to Larry's claims against the magistrate's qualification.

{¶ 15} Civ.R. 53(D)(6) vests the authority concerning a magistrate's qualification to hear a case with the trial court that issued the order of reference pursuant to Civ.R. 53. We do have authority to consider issues relating to the implementation of Civ.R. 53 and regularly undertake such reviews. *See, e.g., Theodore v. Theodore*, 10th Dist. No. 14AP-718, 2015-Ohio-2657, and *Constr. Sys., Inc. v. Garlikov & Assocs., Inc.*, 10th Dist. No. 09AP-1134, 2010-Ohio-3893, ¶ 19 ("Civ.R. 53 requires a trial court, when faced with objections to a magistrate's decision, to conduct an independent review of the magistrate's findings of fact and conclusions of law. *Schultz v. Wurdlow*, 10th Dist. No. 09AP-301, 2010-Ohio-1140, ¶ 11; Civ.R. 53(D)(4)(d). Our review on appeal is different. We review a trial court's adoption, denial or modification of a magistrate's decision for an abuse of discretion. *O'Connor v. O'Connor*, 10th Dist. No. 07AP-248, ¶ 7, 2008 Ohio App. LEXIS 1751, citing *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 1995 Ohio 272, 654 N.E.2d 1254.")

{¶ 16} Issues of a court's authority or subject matter jurisdiction may be raised at any time, and consequently, they may be considered at any time, and this is aside from any plain error analysis. *State v. Brown*, 10th Dist. No. 13AP-349, 2014-Ohio-314, ¶ 29-30. (A "plain-error analysis is unnecessary where the trial court lacked subject-matter jurisdiction as that deficiency may be raised at any time during the proceedings.")

---

[7] The Seventh District Court of Appeals has equated our language in *Hughbanks* concerning judicial "authority" to be the same as jurisdiction. *State v. Power*, 7th Dist. No. 12 CO 14, 2013-Ohio-4254, ¶ 21.

> Subject-matter jurisdiction "connotes the power to hear and decide a case upon its merits." *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 87, 290 N.E.2d 841[.]
>
> \* \* \*
>
> "Jurisdiction over the particular case," as the term implies, involves " ' "the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction." ' " *Pratts* [*v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶12].

*State ex rel. Bell v. Pfeiffer*, 10th Dist. No. 10AP-490, 2011-Ohio-2539, ¶ 16, quoting *In re J.J.*, 111 Ohio St. 3d 205, 2006-Ohio-5484, ¶ 11-12.

{¶ 17} The jurisdictional limitation on the magistrate (and the jurisdictional responsibility of the trial court) is clear in Civ.R. 53(D)(6). Because Civ.R. 53(D)(6) divests any authority from a magistrate to determine whether she should recuse or be disqualified, regardless of where it appears chronologically in the record before us, it is appropriate to consider a lack of jurisdiction when and where we see it in the record. And while I sincerely appreciate the majority's clarification that it is not by its decision giving license to future litigants to ignore the process set forth in Civ.R. 53(D)(6), I believe it important to consider and explore the effect of the issue on our review of the trial court's decision.[8]

{¶ 18} I would find that the magistrate's lack of subject matter jurisdiction to determine her own recusal was not cured by the trial court's subsequent decision. And

---

[8] The majority cites *Lamont v. Lamont,* 11th Dist. No. 2005-G-2628, 2006-Ohio-6204, ¶ 17, and *Unger v. Unger,* 12th Dist. No. CA2000-04-009 (Dec. 29, 2000), as support demonstrating other districts have permitted magistrate jurisdictional errors to be corrected by a subsequent trial court review. In *Lamont,* the facts involved were limited to a generic procedural issue capable of repetition, that is, a magistrate's ruling on a motion for a civil protection order as disqualification from further decisions in the divorce matter. In *Unger,* the movant did not specifically allege that the magistrate was biased or prejudiced against him. The 12th District Court of Appeals in *Unger* specifically found that, "[i]t is axiomatic that a magistrate cannot effectively rule upon a motion to recuse himself. We therefore hold that the proper vehicle for relief when seeking the removal of a magistrate is 'a motion for disqualification of the [magistrate] filed with the court.' " *Id.*, quoting *Gatliff v. Gatliff,* 12th Dist. No. CA84-08-049 (Feb. 11, 1985). The 12th District appellate court found that "the trial court's decision overruling appellant's objections was [not] so unreasonable, arbitrary, or unconscionable as to connote an abuse of discretion." *Id.* While these cases may be persuasive, they are not factually similar enough to my view of the case under review, and they do not cure the jurisdictional defects found here.

this is notwithstanding the trial court's considerable efforts to fairly provide Larry with the subsequent opportunity to object to and be heard on the magistrate's qualification to hear his case. Similar to our holding to *Brown,* I would hold that the trial court's decision overruling Larry's objections to the magistrate's decision on the question of magistrate recusal is null and void, since the magistrate could not rule on such a motion in the first instance. And even if the trial court could "cure" the jurisdictional defect by fully hearing the motion de novo under Civ.R. 53(D)(6), under the facts of this case, the trial court did not provide an independent review of all of the evidence in order to "cure" the jurisdictional defect.

{¶ 19} For these reasons, I respectfully concur in part and dissent in part from the majority's decision.

———————